NONPROFIT LEGAL SERVICES OF UTAH
Aaron C. Garrett, #12519
623 East 2100 South, Suite B1
Salt Lake City, Utah 84106
Tel: (385) 419-4111
Fax: (801) 401-3504
aaron@nonprofitlegalservices.com
*Attorney for Plaintiff Christopher Drew*

<table>
<tr><td colspan="2" align="center">IN THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH, CENTRAL DIVISION</td></tr>
<tr><td><b>CHRISTOPHER DREW</b>,<br><br>        Plaintiff,<br><br>v.<br><br><b>ADT LLC</b>, a Delaware Limited Liability Company,<br><br>        Defendant.</td><td align="center"><b>COMPLAINT</b><br><br>Case No. _____<br><br>Judge _____</td></tr>
</table>

Plaintiff Christopher Drew, by and through undersigned counsel of record, hereby alleges and complains against ADT LLC as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Christopher Drew ("Mr. Drew") is an individual residing in Utah County, Utah.

2.      Defendant ADT LLC ("ADT") is a Delaware limited liability company with a local place of business in Utah County, Utah.

3. Venue is appropriate under 28 U.S.C. § 1391(b) because ADT resides within this district and/or because a substantial part of the events or omissions giving rise to the claims occurred within this district.

4. Mr. Drew initially filed a charge of discrimination in this matter with the Utah Labor Commission and the Equal Employment Opportunity Commission, the latter of which has issued him a Notice of Right to Sue.  The Notice of Right to Sue was issued on or about March 17, 2020. This suit is timely filed on June 9, 2020, which is within the 90 days requirement.

5. Jurisdiction in this Court is proper as the claims herein arise under Federal law, including Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), as well as supplemental jurisdiction under 28 U.S.C. § 1367.

6. The Court has personal jurisdiction over these parties because the events upon which this Complaint is based took place primarily within Utah County, Utah.

7. Upon information and belief, ADT employs at least 15 employees and is therefore covered by Title VII.

## GENERAL ALLEGATIONS

8. Mr. Drew is a male and is a member of a protected class under Title VII.

9. Mr. Drew was employed by ADT from November 2016 until May 2019. Mr. Drew was hired on November 30, 2016 as a Customer Service Agent. In July of 2017, Mr. Drew interviewed for and received a Scheduling Coordinator Position.

10. Throughout his employment with ADT, Mr. Drew performed all of his assigned duties competently and otherwise complied with ADT's employment policies and procedures.

11.     Beginning in a July 2017 interview, and continuing until his termination, ADT cultivated a workplace culture that discriminated against Mr. Drew and otherwise harassed and excluded him on the basis of his gender.

12.     In the July 2017 interview,  ADT Director Logan Cornwall ("Cornwall") stated outright that he preferred to hire women for the position that Mr. Drew was ultimately hired for. Indeed, while Mr. Drew was employed as Scheduling Coordinator, aside from one short-lived exception, Mr. Drew was the only male assigned to that position under Cornwall.

13.     In April 2019, a newly hired Scheduling Coordinator (also female) confided to Mr. Drew that in her interview with Cornwall, Cornwall had (again) mentioned that he preferred to hire females for the position.

14.     In another instance, beginning in October 2017, two female coworkers instigated a rumor that Mr. Drew was romantically interested in one of the female coworkers. Mr. Drew complained about the coworkers' cold and disrespectful behavior  to Team Lead Holly Heidenreich ("Heidenreich") and to Team Manager Abdul Abu-Dan ("Abu-Dan"). Despite assurances from Heidenreich and Abu-Dan, that the two rumor-spreading coworkers had been properly reprimanded, one of the coworkers was soon awarded "Employee of the Month" in October 2017.

15.     On several occasions through the course of Mr. Drew's employment, Mr. Drew was excluded from scheduling team functions and from other opportunities that were available to other members of the scheduling team. In particular, in February 2018, during a team-meeting

that had become emotionally heated concerning a certain customer service policy, management

invited all team members except for Mr. Drew to participate in a follow-up meeting.

16.     During the February 2018 team-meeting, Cornwall yelled at Mr. Drew to "shut

up" before Mr. Drew could finish articulating his opinion on the disputed customer policy. Mr.

Drew later complained of Cornwall's behavior to their mutual boss Ben Clark who dismissed the

complaint and effectively told Mr. Drew to "man up."

17.     In other instances, female coworkers were afforded the opportunity to work

prefered shifts earlier in the day (or later) and on weekends and holidays. Despite Mr. Drew

asking to work these preferred shifts, such opportunities were largely denied to Mr. Drew.

18.     This is just a sample of the discriminatory, harassing, and inappropriate actions

sanctioned by ADT management against Mr. Drew. Combined, these actions caused Mr. Drew a

great deal of stress and frustration, prompting him to reach out to ADT management.

19.     ADT management suggested to Mr. Drew to bring any complaints he may have

against ADT management to Bronson Garner ("Garner") that Mr. Drew felt uncomfortable

bringing to management directly. In so doing, ADT management suggested to Mr. Drew that

Garner was the local HR representative. In fact, Garner was not an HR representative and did not

forward to HR any of the complaints made to him by Mr. Drew.

20.     All told, Mr. Drew reached out to Garner on several occasions to lodge

complaints, most notably on April 19, 2019.

21.     On April 19, 2019, Mr. Drew formally submitted his complaint of gender

discrimination and workplace hostility to Garner, citing primarily to the inappropriate actions of

4

Cornwall. Garner did not disclose that he was not an HR representative. Garner did not forward Mr. Drew's complaint to HR. Rather, Garner confided to Cornwall the complaint lodged by Mr. Drew.

22.     Beginning in late April  2019 (just after lodging his discrimination complaint), Mr. Drew took several days of prearranged paid leave to attend the funerals and related family functions for two of his grandparents. Mr. Drew returned for his first full week back in the office on May 6, 2019.

23.     On May 8, 2019, Mr. Drew observed that some of his coworkers were handling calls by technicians in a way that contradicted the policy that he was familiar with before taking his extended absence. When he asked for clarification on the matter from Heidenreich, one of his coworkers became very defensive, hostile, and antagonizing towards Mr. Drew. In accordance with advice previously offered by Heidenreich, Mr. Drew attempted to de-escalate the situation by leaving the scene rather than engaging in his coworkers aggressive style of argument.

24.     When Mr. Drew returned to his work station, he was summoned to Cornwall's office. Cornwall berated Mr. Drew for leaving and accused him of insubordination. At this time, Cornwall first informed Mr. Drew that there were 4 pending complaints against Mr. Drew filed by service technicians. Mr. Drew was never informed of the content of these complaints or advised as to how he could take corrective action.

25.     As his wife's cousin, Cornwall is closely related to the co-worker (Addri Carrera) who had been antagonizing Mr. Drew in this May 8 dispute.

26.     On May 9, 2019 a team-meeting was held to discuss the policy that had been debated the day before. After the meeting, Cornwall asked to see Mr. Drew in his office. When Mr. Drew asked that someone from HR be present, Cornwall laughed and said something to the effect of: "sure, go get Garner." Neither Cornwall nor Garner said anything to dispel Mr. Drew's mistaken belief that Garner was an HR representative. In retaliation for the complaint lodged against Cornwall, Cornwall placed Mr. Drew on temporary suspension and recommended his termination.

27.     On May 10, 2019, Cornwall notified Human Resource Business Partner Steven Hurd ("Hurd") that Cornwall had placed Mr. Drew on temporary suspension. In retaliation for Mr. Drew's complaint against Cornwall, Cornwall asked for Mr. Drew's immediate termination.

28.     On May 20, 2019, Hurd contacted Mr. Drew to inform him of his termination. However, when Mr. Drew asked about the status of his discrimination and harrasment complaints, Hurd was forced to admit that he had not been made aware of any such complaints. Unbeknownst to Hurd at the time, Mr. Drew had lodged those complaints with Garner under the false pretense that Garner was an HR representative. Garner himself never passed along those complaints to the proper HR authorities or otherwise investigated the complaints' validity.

29.     After Mr. Drew explained to Hurd the complaints Mr. Drew had made to Garner, Hurd briefly paused the termination. After conducting a cursory investigation into the complaints lodged by Mr. Drew, on May 30, 2019, Hurd notified Mr. Drew that his employment with ADT was finally terminated.

30.     ADT management instigated and condoned a workplace culture that was discriminatory and harassing to Mr. Drew. When Mr. Drew complained, ADT management (primarily Garner) prevented those complaints from timely reaching appropriate HR authorities. ADT management (primarily Cornwall) retaliated in response to these complaints by drumming up an excuse to terminate Mr. Drew at the earliest possible convenience. ADT is liable for the illegal discrimination, harrasment, and retaliation condoned and perpetuated by its employees.

31.     This incredibly offensive and hostile work environment offended Mr. Drew deeply, and caused him intense emotional distress and damage.

32.     This hostile work environment also made it difficult for Mr. Drew to perform his duties up to his full ability.

33.     Mr. Drew's termination was causally connected to his complaints about unlawful discrimination, as can be shown by the close proximity between his complaints and termination.

34.     Mr. Drew has suffered substantial damages as a result of ADT's illegal conduct, to wit:

        a.     He has lost wages from being illegally terminated;

        b.     Lost opportunities for advancement, raises, and promotion while at the company;

        c.     Diminished future wages as a result of losing his job and not being able to find subsequent commensurate compensation;

        d.     Front pay;

        e.     Severe emotional distress, and pain and suffering;

f.     Medical bills for treatment and medications made necessary by severe emotional distress;

g.     Attorney's fees; and

h.     Due to the egregious nature of ADT's conduct, in which it acted with malice and reckless indifference toward Mr. Drew, he is entitled to compensatory and punitive damages.

## FIRST CAUSE OF ACTION
## UNLAWFUL DISCRIMINATION UNDER TITLE VII

35.     Mr. Drew incorporates the preceding paragraphs as if stated verbatim herein.

36.     Mr. Drew is a member of a protected class, namely because he is a man.

37.     Mr. Drew suffered an adverse employment action, including that he was terminated from his employment.

38.     Mr. Drew's termination was under circumstances giving rise to discrimination.

39.     Mr. Drew has suffered significant damages as a result of this unlawful discrimination, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## UNLAWFUL RETALIATION UNDER TITLE VII

40.     Mr. Drew incorporates the preceding paragraphs as if stated verbatim herein.

41.     Mr. Drew, by complaining about the discriminatory and harassing comments and actions directed at him, engaged in protected opposition to discrimination.

42.     Mr. Drew suffered an adverse employment action by being terminated.

43.     There is a causal connection between Mr. Drew's protected opposition and the

adverse employment action, including the close temporal proximity between his protected

opposition and his termination.

44.     Mr. Drew has suffered significant damages as a result of this unlawful retaliation,

in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT UNDER TITLE VII**

45.     Mr. Drew incorporates the preceding paragraphs as if stated verbatim herein.

46.     Mr. Drew is a member of a protected class, namely because he is a man.

47.     Mr. Drew was subject to incredibly unwelcome harassment.

48.     This harassment was directed at him on the basis of his membership in a protected

group.

49.     Due to the harassment's severity or pervasiveness, the harassment altered a term,

condition, or privilege of plaintiff's employment and created an abusive working environment.

50.     Mr. Drew subjectively perceived the environment to be harassing, and any

reasonable person would have also objectively perceived the conduct to be so severe and

pervasive that the workplace is objectively hostile or abusive.

51.     Mr. Drew has suffered significant damages as a result of this unlawful hostile

work environment, in an amount to be proven at trial.

WHEREFORE, Mr. Drew prays for relief as follows:

52.     On his first three causes of action, for back pay, front pay, reinstatement, special damages, punitive damages, and compensatory damages, in an amount to be proven at trial.

53.     On all causes of action, attorney fees, costs of suit, and any other relief the Court deems equitable and warranted under the circumstances.

54.     For damages in an amount to be proven at trial, but in no instance less than $300,000.00.

## JURY DEMAND

Mr. Drew demands a jury trial on all claims so triable.

DATED this 9th day of June, 2020.

NONPROFIT LEGAL SERVICES OF UTAH


  /s/ Aaron C. Garrett
Aaron C. Garrett
*Attorney for Plaintiff Christopher Drew*